United States District Court
Southern District of Texas
**ENTERED**
July 20, 2023
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| Christa Leeann McKee, | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action H-22-1332 |
| | § | |
| Kilolo Kijakazi, | § | |
| Acting Commissioner of the | § | |
| Social Security Administration, | § | |
| *Defendant.* | § | |

### MEMORANDUM AND RECOMMENDATION

Christa McKee appeals the Social Security Administration (SSA) Commissioner's (Commissioner) final decision denying her application for social security benefits. ECF No. 1. Pending before the court are Plaintiff's Motion for Summary Judgment, ECF No. 13, and the Commissioner's Motion for Summary Judgment, ECF No. 14. This case has been referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1). ECF No. 10. Having considered the motions, the administrative record, and the applicable law, the court recommends that the Commissioner's final decision be **AFFIRMED**.

### 1. Procedural Posture

McKee filed the instant application for disability insurance benefits (DIB) on January 31, 2019. Tr. 230–33. She alleged a disability onset date of April 1, 2014, due to major anxiety disorder, panic attacks, major depressive disorder, mood disorder, obsessive compulsive disorder (OCD), attention deficit disorder (ADD) and osteoarthritis of the hips. Tr. 78–79. McKee was forty years old on the alleged disability onset date. Tr. 78.

The SSA denied McKee's application at the initial level on June 25, 2019, and on reconsideration on November 21, 2019. Tr. 94–96, 111–

12. Administrative Law Judge (ALJ) Daniel Whitney held a hearing on August 3, 2021. Tr. 31–77.

At the hearing, the ALJ heard testimony from McKee, McKee's husband, and a vocational expert (VE). Tr. 32. McKee's counsel was present and examined all the witnesses. Tr. 54, 68, 75. McKee's counsel gave an opening statement and described the effect of McKee's anxiety, depression, and panic attacks on her daily life and her ability to work. Tr. 35–38. At McKee's request, the ALJ amended the alleged disability onset date to July 1, 2017. Tr. 25.

McKee testified that she dropped out of school in the ninth grade but later obtained a General Education Diploma and an Associate of Science degree. Tr. 45. She worked primarily in payroll but had also worked as a cashier and in photography. Tr. 45–46.

McKee testified that she was unable to work due to her anxiety and panic attacks. Tr. 43. She also reported having ADD and depression. Tr. 43, 45. She stated that she had panic attacks at all her previous jobs when work became busy and overwhelming. Tr. 45. McKee explained that she was unable to perform daily tasks, such as caring for her young child, cleaning the house, doing laundry, and managing her children's schedules. Tr. 46–47. She would not leave the house except occasionally to drive her children to or from school. Tr. 47–48. She did not go grocery shopping because she became overwhelmed and anxious. Tr. 48. McKee claimed that she could not remember to pay bills. *Id.*

McKee reported taking numerous medications, including Xanax, Klonopin, Buspirone, Adderall, Vyvanse, Lamictal, Hydroxyzine, Ambien, Zofran, and Valium. Tr. 48–52. The medications caused side effects including decreased energy, nausea, drowsiness, and sleepiness. Tr. 57. She testified that she felt depressed most days—fifteen to twenty days per month—and would cry uncontrollably. Tr. 55. She would stay in bed those days and was unable to perform any tasks at all. *Id.* She also lost interest in previous social activities, such as attending church and interacting with neighbors. Tr. 55–56. She reported having one or

two panic attacks on a good day but three to four per day on average. Tr. 61. On a good day, she would stay calm and complete at least half of her chores for the day. Tr. 62.

McKee's husband testified that McKee suffered from depression and had panic attacks numerous times per day. Tr. 68. He testified that he handled all household tasks and that McKee regularly missed work because of her mental issues. Tr. 99–100. He testified that McKee had never been hospitalized and no doctor had ever recommended hospitalization. Tr. 71. He also discussed McKee's completion of twelve sessions of electroconvulsive therapy (ECT), which he felt may have had negative effects on McKee's health. Tr. 72.

The ALJ asked the VE to consider a person of McKee's age, education, and work history with the following limitations:

> [S]itting, six hours standing and walking, six hours lifting 20 pounds occasionally, 10 pounds frequently, occasional climbing. No climbing ladders, ropes or scaffolds. Frequent stooping and crawling. Limited to simple nonproduction rate paced jobs. Occasional changes to work procedures and requirements. Incidental interaction with the public. Occasional contact with coworkers and supervisors.

Tr. 74. The VE opined that such an individual could not perform any of McKee's past work but could perform light, unskilled jobs such as price tagger, office cleaner, and garment sorter. Tr. 74–75.

The ALJ issued a decision on August 10, 2021, finding that McKee was not disabled from July 1, 2017, the date of the amended alleged disability onset date, through December 31, 2019, the last date McKee was insured. Tr. 13. McKee requested review of the ALJ's decision, which the Appeals Council denied on March 30, 2022. Tr. 1–3, 219. McKee timely filed a complaint in federal court on April 26, 2022, seeking review of the Commissioner's decision. ECF No. 1.

## 2. *Legal Standards*

The Social Security Act provides DIB to individuals with physical and mental disabilities who have contributed to the program and were

disabled "on or before the date . . . last insured." *See* 42 U.S.C. § 423; *Schofield v. Saul*, 950 F.3d 315, 319 (5th Cir. 2020). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner uses a sequential, five-step approach to determine whether the claimant is disabled. *See Schofield*, 950 F.3d at 317; 20 C.F.R. § 404.1520(a)(4) (2019). The claimant bears the burden of proof on the first four steps, and the Commissioner bears the burden on the fifth step. *See Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021). A finding that the claimant is disabled or not disabled at any point in the five-step review terminates the analysis. 20 C.F.R. § 404.1520(a)(4) (2019).

This court's review of the ALJ's disability determination is "highly deferential," and the court asks "only whether substantial evidence supports the decision and whether the correct legal standards were employed." *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018) (citations omitted). "A decision is supported by substantial evidence if 'credible evidentiary choices or medical findings support the decision.'" *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (quoting *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016)). "Substantial evidence is 'more than a mere scintilla but less than a preponderance.'" *Id.* (quoting *Williams v. Admin. Rev. Bd.*, 376 F.3d 471, 476 (5th Cir. 2004)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. of N.Y. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). The reviewing court must scrutinize the record to determine whether substantial evidence supports the ALJ's decision but may not reweigh the evidence or substitute its judgment. *See Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).

### 3. Analysis

#### A. Step One

At step one, the ALJ must determine whether the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i) (2019). A person engaged in substantial gainful activity is not disabled, regardless of her medical condition, age, education, or work experience. 20 C.F.R. § 404.1520(b) (2019).

The ALJ found that McKee had not engaged in substantial gainful activity between the alleged onset date of July 1, 2017, and her date last insured of December 31, 2019. Tr. 15. This finding is not in dispute.

#### B. Step Two

At step two, the ALJ determines whether any of the claimant's impairments or any combination thereof is severe and has lasted or is expected to last a continuous period of at least twelve months. 20 C.F.R. § 404.1520(a)(4)(ii) (2019) (citing 20 C.F.R. § 404.1509). An impairment is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c) (2019). "[A]n impairment is not severe 'only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.'" *Johnson v. Colvin*, 595 F. App'x 443 (5th Cir. 2015) (quoting *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985)). "A person who does not have a 'severe impairment' is not disabled." *Schofield*, 950 F.3d at 318 (citing 20 C.F.R. § 404.1520(c)).

The ALJ found that McKee had severe impairments of major depressive disorder and anxiety disorder and non-severe impairments of attention-deficit/hyperactivity disorder (ADHD), OCD, obesity, and osteoarthritis of the hip. Tr. 15–16. The ALJ explained that he considered all of McKee's impairments, both severe and non-severe, in assessing her residual functional capacity (RFC). *Id.*

Regarding the non-severe mental impairments of ADHD and OCD, the ALJ concluded that McKee met the criteria for a diagnosis of ADHD but that it was controlled with medication and only caused her to be slightly "off task." Tr. 15 (citing Exs. 1F18/Tr. 339, 6F2/Tr. 551). The ALJ also noted that McKee "did not take medication for OCD during the adjudication period nor has she or the record alleged any limitations affecting her ability to perform basic mental work activities because of this disorder." *Id.* As a result, the ALJ found these impairments to be non-severe. *Id.*

Regarding McKee's non-severe physical impairments, the ALJ noted that McKee's body mass index was within the range for obesity but determined there was no evidence that obesity affected her ability to perform routine movement or necessary physical activities within a work environment. Tr. 15 (citing Ex. 7F3/Tr. 563). He also considered records from McKee's consultative examination indicating that her complaints of hip pain were consistent with her diagnosis of osteoarthritis. Tr. 16 (citing Ex. 7F2, 5/Tr. 562, 565). He reviewed records showing that, although McKee experienced moderate pain at extremes on hip rotation, her hip strength was normal, and she discontinued pain medication after one emergency room visit. *Id.* (citing Ex. 10F6/Tr. 607). He therefore found McKee's obesity and osteoarthritis to be non-severe. *Id.*

McKee disputes only the ALJ's finding that her OCD was non-severe. ECF No. 13 at 1–2. McKee argues that her treating physician, Athi Venkatesh, M.D., and the consultative examiner, Tracy Copp, Ph.D., found her OCD to be severe and that the ALJ erred when he discounted their opinions. *Id.* at 3, 6 (citing Exs. 6F8/Tr. 557, 11F1–15/Tr. 610–24). As discussed below, however, the ALJ thoroughly considered both opinions in the context of assessing McKee's RFC. He rejected Dr. Venkatesh's opinion and found Dr. Copp's opinion to be persuasive. Tr. 22. He also considered other evidence pertaining to McKee's mental status and functioning when formulating her RFC. Tr. 20–22.

Therefore, even if the ALJ erred in finding McKee's OCD non-severe, the error was harmless because the ALJ continued beyond step two and considered all of McKee's impairments in assessing her RFC. *See Herrera v. Comm'r of Soc. Sec.*, 406 F. App'x 899, 903 (5th Cir. 2010) ("However, this case did not turn on a finding that Herrera's impairments were not severe at step two; rather, the ALJ concluded that Herrera was not disabled because, despite his severe impairments, he retained the residual functional capacity to do other work."); *Garcia v. Berryhill*, 880 F.3d 700, 705 n.6 (5th Cir. 2018) ("Any error at step two would likewise be harmless, given that the ALJ concluded at step four, on the basis of substantial evidence, that Garcia retained the ability to perform his past relevant work[.]"); *Dunham v. Berryhill*, No. H-17-2641, 2018 WL 6574838, at *5 (S.D. Tex. Nov. 21, 2018) ("Under the sequential analysis framework, error at step two rarely constitutes reversible error, where, as here, the ALJ conducts the remaining steps of the five-step sequential analysis."). As discussed below, the ALJ fully considered all of McKee's mental conditions in formulating the RFC, which the court finds to be supported by substantial evidence. *See* Part 3.D., *infra*. The court notes that McKee makes no argument that the ALJ's RFC determination is incorrect. She has not demonstrated that the ALJ's ultimate determination would have changed had he found McKee's OCD to be severe. Thus, any error at step two is harmless.

The court's review confirms that the ALJ properly considered the records, drew appropriate conclusions, and employed the proper legal standards. Substantial evidence supports the ALJ's determination at step two.

### C. Step Three

At step three, the ALJ determines if any severe impairment meets or equals a listed impairment in appendix 1 (Listing). 20 C.F.R. § 404.1520(a)(4)(iii)(2019); *see also* 20 C.F.R. Part 404, Subpt. P, App'x 1 (2019). The Listing describes impairments that the SSA considers "severe enough to prevent an individual from doing any gainful activity,

regardless of . . . age, education, or work experience." 20 C.F.R. § 404.1525(a) (2019). The claimant will be found disabled if all the criteria of a Listing are met or equaled. 20 C.F.R. § 404.1520(d) (2019); *Whitehead*, 820 F.3d at 780–81. The claimant has the burden of establishing that an impairment meets or equals the specified criteria of a Listing. *Whitehead*, 820 F.3d at 780–81.

The ALJ considered Listing section 12.04 (depressive, bipolar, and related disorders) and section 12.06 (anxiety and obsessive-compulsive disorders). Tr. 16. These Listing sections each have criteria set forth in paragraphs A, B, and C. Listing § 12.00(A)(2) (2019). To be found disabled at this step, a claimant's mental disorder must satisfy the requirements of both paragraphs A and B or both paragraphs A and C. *Id*. Paragraphs B and C are the same for each Listing the ALJ considered. Thus, if a claimant does not meet either of paragraphs B or C, she does not meet any of the Listing sections under consideration here.

The paragraph B criteria relate to four broad areas of mental functioning used in a work setting. Listing § 12.00(A)(2)(b). Those four areas are the ability to: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. *Id*. The ALJ must evaluate the claimant's ability to function using this rating scale:

1. No limitation (or none). [The claimant is] able to function in this area independently, appropriately, effectively, and on a sustained basis.
2. Mild limitation. [The claimant's] functioning in this area independently, appropriately, effectively, and on a sustained basis is slightly limited.
3. Moderate limitation. [The claimant's] functioning in this area independently, appropriately, effectively, and on a sustained basis is fair.
4. Marked limitation. [The claimant's] functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited.

    5. Extreme limitation. [The claimant is] not able to function in this area independently, appropriately, effectively, and on a sustained basis.

Listing § 12.00(F)(2). A claimant meets the criteria if her disorder results in an "extreme" limitation in one, or a "marked" limitation in two, of the four areas of mental functioning. *Id.*

    The ALJ found that McKee had only moderate limitations in each of the four areas. Tr. 16–17. As for understanding, remembering, or applying information, the ALJ considered McKee's education, work history, and consultative examination. Tr. 16. He noted that McKee has a high school education and sustained semi-skilled employment. *Id.* He cited her consultative examination, which showed that McKee correctly drew an analog clock and could recall one of three objects after a five-minute delay. Tr. 553. He also noted treatment records indicating that McKee's recent and remote memory were generally intact, but her recent memory was occasionally impaired upon examination. Tr. 351, 369, 399, 420, 546–77, 649. He concluded that the record overall showed that McKee had only a moderate limitation in this category. Tr. 16.

    In considering McKee's ability to interact with others, including supervisors, coworkers, and the public, the ALJ considered treating provider records indicating that McKee was cooperative with her medical providers but that she endorsed difficulty going out in public places. Tr. 351, 355, 369, 429. The ALJ concluded that McKee had a moderate limitation. Tr. 17.

    As for concentrating, persisting, or maintaining pace, the ALJ noted that the medical records did not show any objective abnormalities in McKee's ability to attend or concentrate. Tr. 17. He noted that, according to her treating provider's records, McKee's attention and concentration were generally intact, but her attention was occasionally impaired on examination. Tr. 351, 369. The ALJ also noted Dr. Copp's observation that McKee was "on task" and attentive throughout the psychological consultative examination and that while McKee was

unable to perform a simple subtraction problem presented to her orally, she was able to perform serial threes without errors. Tr. 552. The ALJ concluded that McKee had a moderate limitation in this area. Tr. 17.

Finally, as for adapting or managing oneself, the ALJ cited medical records where McKee's providers described her grooming and hygiene as adequate. Tr. 351, 369, 399, 420. He also noted McKee's own statement during her psychological consultative examination that she could groom herself without assistance but did not have the motivation to do so. Tr. 553. The ALJ concluded that McKee had a moderate limitation in this area and did not satisfy the paragraph B criteria. Tr. 17.

The ALJ also considered the paragraph C criteria. Tr. 18. To satisfy paragraph C, the claimant must prove that her mental disorders are serious and persistent. Listing §§ 12.04, 12.06. The criteria require a medically documented history of the disorder over a period of at least two years and evidence of both: (1) medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and diminishes the symptoms and signs of the mental disorder, and (2) marginal adjustment, that is, minimal capacity to adapt to changes in environment or to demands not already part of daily life. *Id.* The ALJ concluded that there was no evidence to support the existence of the paragraph C criteria. Tr. 18.

The ALJ's step three findings are not in dispute. Nonetheless, the court has carefully considered the record and concludes that the ALJ's reading of the records is accurate. The ALJ drew appropriate and supported conclusions from the records, and it does not appear that he ignored contrary evidence or misstated or misinterpreted the evidence. The ALJ employed the appropriate legal standards, and his decision is supported by substantial evidence.

### D. Residual Functional Capacity

Before reaching the final two steps, the ALJ must assess the claimant's RFC. 20 C.F.R. § 404.1520(e) (2019) (citing 20 C.F.R. § 404.1545). The RFC is a determination of the most a claimant can do

despite all physical and mental limitations. *Perez*, 415 F.3d at 462. The RFC determination is "based on all the relevant medical and other evidence in [the] case record[.]" 20 C.F.R. § 404.1520(e) (2019); *see also Perez*, 415 F.3d at 461–62 (citing 20 C.F.R. § 404.1545(a)(1)); SSR 96–8p, 1996 WL 374184, at *2–*5 (July 2, 1996). The ALJ is responsible for assessing a claimant's RFC. 20 C.F.R. § 404.1546(c) (2019); *see also Taylor v. Astrue,* 706 F.3d 600, 602–03 (5th Cir. 2018) (stating that the RFC determination is the "sole responsibility of the ALJ").

The ALJ determined that McKee had the RFC to perform:

> Light work . . . that is sitting six hours, standing, and walking six hours, and lifting 20 pounds occasionally[] and 10 pounds frequently. The claimant is limited to occasional climbing but no climbing of ropes, ladders, or scaffolds. The claimant is limited to frequent stooping and crawling. The claimant is limited to simple, nonproduction rate pace jobs, occasional changes to work procedures and requirements with incidental interaction with the public, and occasional contact with coworkers and supervisors.

Tr. 18. The ALJ considered McKee's symptoms, her and her husband's testimony, the medical opinions, the medical records, and the prior administrative medical findings. *Id.* at 18–23.

As for McKee's and McKee's husband's hearing testimony, the ALJ concluded that McKee's medically determinable impairments could reasonably be expected to cause her symptoms. Tr. 19. However, the ALJ found that McKee's statements about the intensity, persistence, and limiting effects of the symptoms were not entirely consistent with the record evidence. *Id.* The ALJ supported his finding with a thorough discussion of McKee's treatment records from 2016–2019. Tr. 19–21.

April 2016 records indicate that McKee's mild major depressive disorder with anxious distress should be treated with medication and psychotherapy. Tr. 341. The ALJ noted that, according to July 2017 medical records, McKee reported doing much better and slowly improving on medication. Tr. 463. The records show that McKee stated

she was taking less Xanax, was more productive and focused, and that she began psychotherapy treatment. Tr. 456, 461. August and September 2017 records show that McKee reported she was "good[,]" her anxiety and mood were a lot better, and her depression was fully under control. Tr. 446, 451. October 2017 psychotherapy notes show that McKee presented with a stable mood and was cooperative, made good eye contact, had good insight and awareness, and had a logical and coherent thought content and process. Tr. 444–45. December 2017 records show that McKee started taking her son to daycare part-time. Tr. 429. She initially felt anxious about that but had "slowly been easing up to it" and thought that it helped reduce her stress and anxiety. *Id.* The same records show that McKee reported her mood was better, that she did not feel as overwhelmed, and that her medications generally helped. *Id.*

February 2018 records show that McKee's medications were adjusted several times and that she felt better after the latest adjustment. Tr. 419. The records state that McKee reported feeling anxious but less agitated and that her mood had improved. *Id.* Other than an anxious mood and impaired attention, the records show that McKee's mental status examination was normal. Tr. 420–21. May 2018 records show that McKee was still anxious but did not feel overwhelmed and felt like she was handling things a lot better. Tr. 398. Those records also state that McKee had made progress and that she denied depressive symptoms. *Id.* June and July 2018 records show that McKee stopped taking Prozac and felt fine. Tr. 388, 393. The same records state that McKee was doing well—she was not depressed, her anxiety was well under control, and her mood was stable. Tr. 388, 393.

October 2018 records show that McKee reported feeling better, having a calmer mood, and experiencing less anxiety. Tr. 368, 375. She also reported taking less Xanax, sleeping better, and feeling happier. Tr. 368, 375. She stated that therapy was very beneficial, and that she did not want to isolate herself as much. Tr. 375. Her mental status

examination was normal and revealed a stable mood, logical thought process with normal content, and good insight and awareness. Tr. 369. The cited records show that McKee continued to do well in December 2018 and that she reported improvement in symptoms. Tr. 363. The records show that McKee continued to have a stable mood, logical and coherent thought content and processes, and good insight and awareness. Tr. 363.

January 2019 records show that McKee reported she was not doing well and that she started to "trend down drastically" in the last month. Tr. 357. The records state that she was almost hospitalized during the Christmas break and that she was apathetic and felt hopeless. *Id.* The records show that she had a somewhat anxious mood but was cooperative, made good eye contact, had fair insight and awareness, and had a logical and coherent thought content and process. Tr. 355. March 2019 records show that McKee completed a twelve course ECT treatment and reported significant improvement in her depression. Tr. 350. The mental status examination revealed that McKee's insight and judgment were intact, her language was abstract, and her fund of knowledge was average. Tr. 351–52.

The ALJ also considered McKee's psychological consultative examination with Dr. Copp. Tr. 21; *see also* Tr. 550–60. The examination records reveal that McKee drove six miles to the interview and was unaccompanied. Tr. 550. Notes of the mental status examination show that McKee was attentive and well groomed. Tr. 552. The same notes also state that McKee had "blunted" reactions, a dysphoric mood, spontaneous responses, normal speech, and that she easily remained "on task" throughout the examination. *Id.*

The ALJ considered the state agency medical consultants' opinions. Tr. 22; *see also* Tr. 86, 103. At the initial level, the state agency medical consultant found that McKee was limited to work at the medium exertional level. Tr. 89. The ALJ found this opinion was inconsistent with McKee's physical consultative examination, which showed that

McKee could only carry less than thirty pounds. Tr. 22 (citing Ex. 7F4/Tr. 564); *compare* Tr. 89 (medical consultant opinion that McKee can carry fifty pounds), *with* Tr. 564 (consultative examination finding McKee can carry less than thirty pounds). On reconsideration, the state agency medical consultant found that McKee was limited to light work with postural limitations. Tr. 106, 110.   The ALJ found this more limiting opinion to be more persuasive because it was consistent with the thirty-pound weight limitation and was supported by McKee's activities of daily living. Tr. 22 (citing Ex. 3A/Tr. 97–111). Accordingly, the ALJ limited McKee to light, simple work with social limitations. *Id.*

The ALJ considered the opinions of Dr. Copp and Dr. Venkatesh. Tr. 22. Dr. Copp opined that McKee had only moderate functional limitations. Tr. 557. The ALJ found that opinion to be persuasive because it was supported by Dr. Copp's documented findings and was consistent with the moderate limitations found by the medical consultants at the initial and reconsideration levels of review. Tr. 22. Dr. Venkatesh opined that McKee had marked and extreme functional limitations. Tr. 622. The ALJ found that opinion to be less persuasive because it lacked supporting documentation, was past McKee's last date insured, and was inconsistent with the generally normal mental status examinations and improved symptoms shown throughout the record. Tr. 22, 647–49. He also found that it was inconsistent with Dr. Copp's and the medical consultants' opinions. Tr. 22, 78–95, 97–111, 557. Based on the foregoing, the ALJ properly considered the supportability and consistency of the medical opinions and administrative medical findings. *See* 20 C.F.R. §§ 404.1520c(a), (b)(2) (2019) (requiring the SSA to explain how it considered the factors of supportability and consistency in evaluating the persuasiveness of medical opinions and administrative medical findings).

The ALJ considered the testimony and third-party function report prepared by McKee's husband and found it probative. Tr. 23.

14

Although McKee did not have any severe physical impairments, the ALJ considered McKee's non-severe impairments and her mental impairments and limited McKee to light work "as a prophylactic measure to deal with" any physical symptoms, such as fatigue, that might be caused by her mental impairments. Tr. 23.

The ALJ found McKee's claim that she could not work, function, or leave the house to be unsupported by the record evidence. Tr. 23. The ALJ observed that McKee appeared at her lawyer's office for the hearing, that she was able to discuss her case without trouble, gave long-winded responses, and had no breakdowns while testifying. *Id.* He also noted that McKee had never been hospitalized and that it had never been recommended. *Id.* The ALJ also pointed to the function report prepared by McKee's husband, which revealed that McKee could prepare meals, drive, shop in stores and online, handle money, and care for herself, her children, and the family's dog. Tr. 23, 256–58. The ALJ noted that the social interactions and abilities required to perform those activities were the same as those necessary to obtain and maintain employment. Tr. 23.

The ALJ's RFC determination is not in dispute. The court has reviewed all of the above records and finds that the ALJ's assessment is consistent with the law and supported by substantial evidence.

### E. Step Four

At step four, the ALJ determines whether the claimant can perform jobs she previously worked by comparing the RFC determination with the demands of the claimant's past relevant work. 20 C.F.R. § 404.1520(f) (2019); *see also Perez*, 415 F.3d at 462. If the claimant can perform her past work, she is not disabled. 20 C.F.R. § 404.1520(f) (2019). If the claimant cannot perform her past work, the ALJ proceeds to step five. *See* 20 C.F.R. § 404.1520(g)(1) (2019).

The ALJ determined McKee could not perform her past relevant work as a payroll clerk. Tr. 24. This finding is not in dispute.

### F. Step Five

At step five, the ALJ determines whether the claimant can perform any other work by considering the claimant's RFC and other factors, including age, education, and past work experience. *Schofield*, 950 F.3d at 318 (quoting 20 C.F.R. § 404.1520(a)(4)(v)). If the claimant can perform other work available in the national economy, the claimant is not disabled. *Schofield*, 950 F.3d at 318 (citing 20 C.F.R. § 404.1520(g)).

The ALJ found that McKee could perform jobs that exist in significant numbers in the national economy. Tr. 24–25. The ALJ relied on the VE's testimony that an individual of McKee's age, education, work experience, and RFC could adjust to work as a price tagger, office cleaner, or garment sorter. Tr. 25. The ALJ concluded that McKee was not disabled. *Id.*

Because the VE's testimony was based on the ALJ's hypothetical question that incorporated all the limitations reasonably recognized by the ALJ, and because McKee's attorney had the opportunity to cross examine the VE, the VE's testimony is substantial evidence supporting the ALJ's step-five determination. *See Masterson v. Barnhart*, 309 F.3d 267, 276–74 (5th Cir. 2002) (holding that the ALJ properly relied on the VE's testimony because the ALJ "scrupulously incorporated" all the limitations "supported by the evidence and recognized by the ALJ" and gave an opportunity for cross examination). This finding is not in dispute.

### 4. Conclusion

The ALJ's decision denying social security benefits is consistent with the law and supported by substantial evidence. There is no genuine issue of material fact, and summary judgment is appropriate. Fed. R. Civ. P. 56(a), (c). Accordingly, the court recommends that McKee's Motion for Summary Judgment be **DENIED**; that the Commissioner's Motion for Summary Judgment be **GRANTED**; and that the Commissioner's final decision be **AFFIRMED**.

The parties have fourteen days from service of this Memorandum and Recommendation to file written objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. Failure to timely file objections will preclude appellate review of factual findings or legal conclusions, except for plain error. *See Thomas v. Arn*, 474 U.S. 140, 147–49 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).

Signed at Houston, Texas on July 20, 2023.

Peter Bray
United States Magistrate Judge